RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0165P (6th Cir.)
File Name: 02a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOE J. RICHARD,
      *Plaintiff-Appellant,*

      *v.*

DR. EDWARD RAY, JR.;
SAMARITAN HOSPITAL, a/k/a
COLUMBIA HOSPITAL
LEXINGTON,
      *Defendants-Appellees.*

No. 01-5665

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 00-00228—Henry R. Wilhoit, Jr., District Judge.

Submitted: April 23, 2002

Decided and Filed: May 8, 2002

Before: DAUGHTREY and MOORE, Circuit Judges;
SIMPSON, District Judge.[*]

_____

[*]The Honorable Charles R. Simpson III, United States District Judge
for the Western District of Kentucky, sitting by designation.

————————————————

**COUNSEL**

**ON BRIEF:**   Clayton L. Robinson, Lynn Rikhoff Kolokowsky, JENKINS, PISACANO, ROBINSON & BAILEY, Lexington, Kentucky, Byron N. Miller, THOMPSON, MILLER & SIMPSON, Louisville, Kentucky, for Appellees.  Joe J. Richard, Memphis, Tennessee, pro se.

————————————————

**OPINION**

————————————————

   PER CURIAM.   Joe J. Richard, a federal prisoner proceeding pro se, appeals a district court judgment dismissing his diversity medical malpractice action.  *See* 28 U.S.C. § 1332.  This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed.  Fed. R. App. P. 34(a).

   Seeking monetary relief, Richard filed a complaint on May 23, 2000, against Edward Ray, Jr., M.D. and Samaritan Hospital.  Richard alleged that during his incarceration at the Federal Correctional Institution located in Memphis, Tennessee ("FCI-Memphis"), he was diagnosed with prostate cancer.  As a result of the diagnosis, Richard was transferred from FCI-Memphis to the Federal Medical Center located in Lexington, Kentucky, for prostate surgery.  On March 17, 1998, Richard underwent a radical perineal prostatectomy, which was performed by Ray at the Samaritan Hospital. During the surgery, Richard alleged that he suffered an injury to his rectum, which was repaired by Ray.  In addition, Richard alleged that during the surgery Ray inserted a catheter into his bladder to allow for drainage.  According to Richard, the catheter was removed after the surgery and another catheter was inserted.  The second catheter was removed by another doctor on April 8, 1998, pursuant to Ray's instructions.

date it was submitted to prison authorities for forwarding to the court clerk pursuant to the mailbox rule set forth in *Houston*.

Accordingly, the request for judicial notice is denied, the motion for leave to correct the record is granted, and the district court's judgment is vacated and this case is remanded to the district court for further proceedings. Rule 34(j)(2)(C), Rules of the Sixth Circuit.

Following the surgery, Richard experienced pain in his back and difficulty urinating. Richard alleged that pus formed around the catheter, his urine contained blood and clots, and he suffered clammy wet skin, chills, "itching rash and blisters on his back." On April 22, 1999, and May 8, 1999, medical staff at FCI-Memphis inserted catheters into Richard's bladder in order to drain the bladder and provide pain relief for Richard. A subsequent medical examination revealed the presence of a portion of a catheter, approximately three inches in length, in Richard's bladder. On May 20, 1999, Dr. William Shappley removed the catheter segment from Richard's bladder at a hospital in Memphis. Richard alleged that both his rectal injury and bladder injury, resulting from the catheter segment located in his bladder, were caused by the negligence of Ray and Samaritan Hospital during his prostate surgery in 1998.

The defendants filed motions for summary judgment, to which Richard responded. The district court granted the defendants' motions and dismissed Richard's complaint as time-barred. Richard has filed a timely appeal. He has also filed a request for judicial notice and a motion to grant the district court leave to correct the record, to which the defendants have responded.

We review the district court's grant of summary judgment de novo. *Kincaid v. Gibson*, 236 F.3d 342, 346 (6th Cir. 2001). Summary judgment is appropriate when the evidence presented shows "'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)).

When federal court jurisdiction is based upon diversity of citizenship, as here, this court must apply the law of the forum state. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Stalbosky v. Belew*, 205 F.3d 890, 893 (6th Cir. 2000). Because Richard alleged a state tort claim of medical malpractice, the applicable state statute of limitations should be applied. *See Hodge v. Serv. Mach. Co.*, 438 F.2d 347, 348

(6th Cir. 1971). In Kentucky, a medical malpractice action must be brought within one year of the date on which the cause of action accrues. Ky. Rev. Stat. Ann. § 413.140(1)(e) (Michie 2001). A medical malpractice action accrues "at the time the injury is first discovered or in the exercise of reasonable care should have been discovered." Ky. Rev. Stat. Ann. § 413.140(2) (Michie 2001).

It is undisputed that Richard became aware of his bladder injury when Dr. Shappley removed the portion of catheter from his bladder on May 20, 1999. Thus, the statute of limitations began to run on May 20, 1999, and expired one year later. However, since May 20, 2000, fell on a Saturday, Richard had until May 22, 2000, to timely file the instant complaint. *See* Fed. R. Civ. P. 6(a). Richard's complaint was stamped "filed" by the court clerk on May 23, 2000.

In *Houston v. Lack*, 478 U.S. 266, 270 (1988), the United States Supreme Court held that a pro se petitioner's notice of appeal on habeas corpus review is deemed filed on the date that it is turned over to prison officials for transmittal to the court. Based upon an interpretation of the language of Federal Rules of Appellate Procedure 4(a)(1) and 3(a), which provide that an appeal is commenced with the filing of notices of appeal with the court clerk, the Supreme Court held that the language of the rules was sufficient to allow accommodation for the unique circumstances of an incarcerated pro se petitioner. *Id.* at 270-272. In reaching this holding, the Court identified several concerns particular to the incarcerated petitioner without counsel: 1) the petitioner's inability to control the notice of appeal after it has been delivered to prison officials, 2) the petitioner's lack of legal counsel to institute and monitor the process and 2) the temptation for willful obstruction on the part of prison authorities in order to sabotage the prisoner's claim. *Id.*

All of the justifications for applying the mailbox rule in *Houston v. Lack* are present in the instant case. First, as noted by the Fourth Circuit in *Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir. 1991), the language of Fed. R. Civ. P.

5(3), governing the filing of civil complaints in federal court, is directly comparable to the language of Fed. R. App. P. 4(a)(1) interpreted in *Houston v. Lack*. *See Lewis*, 947 F.2d at 736; *see also Garvey v. Vaughn*, 933 F.2d 776, 782 (11th Cir. 1993) (holding that the language of both rules is "so similar that an identical interpretation is warranted"); *Cooper v. Brookshire*, 70 F.3d 377, 380 (5th Cir. 1995) (quoting the similar language analysis in *Lewis* and *Garvey* with approval). Both rules simply require that in order to initiate an action, the appropriate legal documents must be "filed with the clerk of the court". *See* Fed. R. Civ. P. 5(e); Fed R. App. P. 4(a)(1). Second, all of the concerns highlighted by the Supreme Court in *Houston v. Lack* are present when a pro se prisoner files a civil complaint. The prisoner loses control over the filing of the claim, the prisoner is without legal counsel charged with a duty of monitoring the legal process, and the prison officials maintain at least equivalent, if not stronger, motivations to willfully obstruct the prisoner's claim. *See Houston*, 487 U.S. at 271-72; *see also, e.g., Garvey*, 993 F.2d at 782-783; *Lewis*, 947 F.2d at 734; *Cooper*, 70 F.3d at 379 ("The temptation for willful obstruction recognized in *Houston* as to notice of appeal is even more compelling in the case of complaints."). Finally, many of the circuits extending the filing rules of *Houston v. Lack* to civil complaints have taken note that *Houston* gives no indication, in either text or analytical framework, that it should be limited to the habeas context. *See Dory v. Ryan*, 999 F.2d 679, 682 (2nd Cir. 1993); *Cooper*, 70 F.3d at 380; *Lewis*, 947 F.2d at 736. Accordingly, we hold that *Houston v. Lack* applies to civil complaints filed by pro se petitioners incarcerated at the time of filing.

Upon review, we vacate the district court's judgment dismissing Richard's complaint as untimely and remand for further proceedings. Richard presented evidence that he submitted his complaint to prison officials for mailing prior to the expiration of the one-year statute of limitations. The defendants did not offer any evidence or argument to refute Richard's statements that his complaint was placed in the prison mail system before May 22, 2000. Therefore, Richard's complaint should be deemed timely filed as of the